UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

NAUTILUS INSURANCE COMPANY                                    PLAINTIFF

v.                                        CIVIL ACTION NO: 3:22-CV-274-CRS

NINA COLVIN, AS PARENT AND                                    DEFENDANTS
STATUTORY GUARDIAN ON BEHALF OF
W.M.C, MINOR; OUTER LOOP CHILD
CARE, INC.; and RAMIAH BERRI
DOUGLAS

## <u>MEMORANDUM OPINION</u>

This matter is before the Court on the motion of Defendant Outer Loop Child Care, Inc.

("Outer Loop") to dismiss the complaint of Plaintiff Nautilus Insurance Company ("Nautilus") for

lack of jurisdiction. Def. Mot. Dismiss; DN 20. Nautilus has responded. Pl. Resp., DN 25. Outer

Loop did not reply within the timeframe required under Local Rule 7.1(c). The matter is now ripe

for adjudication.

## I.

Nautilus is an insurance company organized under the laws of Arizona and with its

principal place of business located in Arizona. Compl., DN 1, PageID# 1. Outer Loop is a licensed

childcare service incorporated under Kentucky law and with its principal place of business in

Kentucky. Colvin State Compl., DN 1-1, PageID# 15-16. Ramiah Berri Douglas ("Douglas") was

an employee of Outer Loop at all times relevant to the instant action. *Id.*, PageID# 16. Nina Colvin

("Colvin") is the parent and statutory guardian on behalf of W.M.C., a minor who was under the

supervision of Outer Loop and Douglas on April 1, 2021. *Id.*

1

In November 2021, Colvin filed a complaint in state court against Outer Loop and Douglas, alleging that on or about April 1, 2021, Douglas "physically restrained" W.M.C. by binding the child to a chair with painter's tape "for approximately 40 minutes." DN 1-1, PageID# 16. In her state action (the "*Colvin* Lawsuit"), Colvin asserts against Douglas claims of tortious assault and battery, negligence, and false imprisonment and against Outer Loop claims of premises liability, failure to train and supervise, and liability for Douglas' actions under a theory of *respondeat superior*. *Id.*, PageID# 17-20. Colvin seeks compensatory damages for "permanent and irreparable harm, injury and damage, including physical, mental and emotional pain and suffering; past, present and future medical expenses[.]" DN *Id.*, PageID# 21. She also seeks punitive damages and costs, including attorney's fees. *Id.*

At the time of the alleged incident, Outer Loop and its employees were "insureds" on a "multi-peril commercial lines insurance policy" purchased from Nautilus ("the Nautilus Policy" or "the Policy"). *See* DN 1-2, PageID# 48 (discussing who is an insured); *id.*, PageID# 26 (indicating that the insurance policy period ran from December 31, 2020 through December 31, 2021). The relevant portions of the Policy are below.

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

. . .

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at

2

our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

  (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

  (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

  (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory[.]" DN 1-2, PageID# 40.

. . .

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

  . . .

  **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. *Id.*, PageID# 48.[1]

  . . .

**2.** Each of the following is also an insured:

  **a.** Your . . . "employees", . . . but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. *Id.*, PageID# 49.[2]

. . .

## SECTION V – DEFINITIONS

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

---

[1] "OUTER LOOP CHILDCARE INC" is listed on the declarations page as the "insured." DN 1-2, PageID# 26.
[2] Colvin has asserted that Douglas was an employee of Outer Loop acting within the scope of her employment on April 1, 2021 (s*ee* DN 1-1, PageID# 17) and Nautilus has not offered any evidence or argument to the contrary.

    **a.** The United States of America (including its territories and possessions), Puerto Rico and Canada. *Id.*, PageID# 52.

. . .

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. *Id.*, PageID# 54.

The above coverage is subject to certain limitations, three of which are relevant to the case at bar. First, the Nautilus Policy indicates that the maximum coverage for damages because of bodily injuries resulting from any given "occurrence" is $1,000,000. DN 1-2, PageID# 39 (indicating "each occurrence limit" of $1,000,000), 40 (defining coverage in Sections I.A.1.a. and I.A.1.b).

Second, and most crucial to the instant action, the Policy limits the types of bodily injuries that are covered up to $1,000,000. As discussed above, the Policy covers damages for bodily injuries arising from an "occurrence"—which is defined in the Policy as an "accident." *Id.*, PageID# 40, 54. The Policy itself does not appear to cover damages for bodily injuries arising out of abuse or molestation. *Id.*, PageID# 66. However, Outer Loop paid a separate premium[3] for an endorsement (the "Abuse or Molestation," or "AM," Endorsement) to the Policy, which provided limited insurance coverage for these types of injuries. DN 1-2, PageID# 66-69. The relevant portions of the AM Endorsement are shown below.

**SCHEDULE**

**LIMITS OF INSURANCE**

| | |
|---|---|
| **Abuse Or Molestation Liability Each Event Limit** | $      100,000 |
| **Abuse Or Molestation Liability Aggregate Limit** | $      300,000 |

---

[3] *See* Commercial General Liability Coverage Part Declarations, DN 1-2, PageID# 39 (indicating that, in addition to the premium for the Policy, Outer Loop paid a separate premium for the AM Endorsement).

| DESCRIPTION OF OPERATIONS | PREMIUM |
|---|---|
| Day Care Center | $        250 |

**A.** Except as provided by this endorsement, the following is added to 2. Exclusions of Section I -Coverage A – Bodily Injury And Property Damage Liability, Coverage B – Personal And Advertising Injury Liability, and Coverage C – Medical Payments: This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of "abuse or molestation."

**B.** In return for the payment of premium shown in the Schedule and subject to all the terms and conditions of this Coverage Part, we will provide you insurance for "abuse and molestation", but only as indicated on this endorsement and subject to the Limits of Insurance and provisions as set forth in this endorsement. The Limits of Insurance shown in the Schedule are the only Limits of Insurance available to any insured under this Coverage Part, to which this insurance applies.

**C.** The following is added to 1.a. Insuring Agreement of Section I – Coverage A – Bodily Injury And Property Damage Liability:

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" arising out of "abuse or molestation" that takes place in the "coverage territory" and occurs during the policy period. We will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" to which this insurance does not apply. We may, at our discretion, investigate any "event" and settle any claim or "suit" that may result, but:

  **1.** The amount we will pay for damages is limited as described in **H**, and **I**, below; and
  **2.** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements of any claim or "suit" against any insured. DN 1-2, PageID# 66.

. . .

**G.** With respect to the insurance provided by this endorsement, the following is added to Section II – Who Is An Insured:

The following is also an insured:

5

Your "employees", but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. *Id.*, PageID# 67.

. . .

**H.** The following is added to Section III – Limits Of Insurance:

    **1. Abuse or Molestation Liability Each Event Limit**

        **a.** Subject to the Abuse and Molestation Liability Aggregate Limit shown in the Schedule, the Abuse or Molestation Liability Each Event Limit shown in the Schedule is the most we will pay for the sum of all "bodily injury" because of "abuse or molestation" arising out of any one "event".

        **b.** Regardless of the number of acts of "abuse or molestation", or the period of time over which such acts take place, or the number of persons upon whom such acts of "abuse or molestation" are inflicted, all "bodily injury" arising out of such acts of "abuse or molestation" committed by one person, or two or more persons acting in together or in concert, will be considered one "event", subject to the Abuse Or Molestation Liability Each Event Limit shown in the Schedule. *Id.*, PageID# 68.

. . .

**K.** The following definitions are added to the Definitions section:

    **1.** "Abuse or molestation" means "bodily injury" to any person while in the care, custody or control of any insured, arising out of actual or threatened abusive behavior, conduct, or verbal or nonverbal communication whether such "bodily injury" is:

        **a.** For sexual gratification, discrimination, intimidation, coercion, or for any other purpose; or

        **b.** Results in emotional or psychological injury or harm of any person(s).

    "Abuse or molestation" includes the negligent:

        **a.** Employment;

6

**b.** Supervision;

**c.** Investigation;

**d.** Reporting to the proper authorities or failure to so report; or

**e.** Retention

of a person whose behavior, conduct or verbal or nonverbal communication results in "abuse or molestation",

. . .

**3.** "Event" means one or more acts of "abuse or molestation" committed by one person, or two or more persons acting together or in concert, against one or more persons, taking place over a period of time. The "event" commences on the date the first act pf "abuse or molestation" is committed and ends on the date the last act of "abuse or molestation" is committed. *Id.*, PageID# 69.

Finally, the Policy is modified by a Punitive and Exemplary Damages Exclusion Endorsement ("the PED Exclusion"), which states that "[t]his insurance does not apply to punitive or exemplary damages, including but not limited to those damages that may be imposed to punish a wrongdoer or to deter others from engaging in a similar behavior." DN 1-2, PageID# 71.

Pursuant to the Nautilus Policy, "Nautilus has at all times defended, and continues to defend, Outer Loop and Douglas in the *Colvin* Lawsuit," subject to a "full and complete reservation of rights." DN 1, PageID# 5. Nautilus is not, itself, a party to the *Colvin* Lawsuit. *See* DN 1-1, PageID# 15-16.

## II.

The controversy presently before this Court centers on the meaning and implications of the three aforementioned coverage limitations. In March 2022, Colvin submitted a "policy limits demand" to defense counsel for Outer Loop, after which the parties corresponded about the "policy limits" of the Nautilus Policy. DN 1, PageID# 5-6. Colvin sent a second letter, this time to Nautilus,

in April 2022, arguing that "the Nautilus Policy provided a limit of $100,000 for Douglas and a separate $1,000,000 for Outer Loop, purportedly resulting in a $1,100,000 limit of available coverage under the Nautilus Policy" and "contended that the Nautilus Policy's Punitive Damages Exclusion "is void as against the stated public policy[.]" *Id.*, PageID# 6.

Nautilus asserted, and continues to assert, "that the Nautilus Policy incorporated an 'abuse or molestation' sublimit of $100,000 for Outer Loop and Douglas, combined" and that the PED Exclusion "bars coverage for any punitive and/or exemplary damages ultimately awarded in the *Colvin* Lawsuit." *Id.*, PageID# 8, 12. In May 2022, Nautilus offered to settle with Colvin, "in exchange for a full and complete release of any and all claims against Outer Loop and Douglas," for $100,000— which Nautilus claims "constitutes the full limits of the Nautilus Policy for claims relating to abuse or molestation." *Id.*, PageID# 6-7. Colvin rejected this offer. *Id.*, PageID# 7.

Failing to come to an agreement about the limits of the Nautilus Policy, Nautilus filed an action in this Court against Colvin, Douglas, and Outer Loop, seeking "a judicial determination of the applicable policy limit of the Nautilus Policy as it relates to the claims asserted in the *Colvin* Lawsuit." *Id.*, PageID# 8. Specifically, Nautilus asks the Court to:

    a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policy;
    b. Find and declare that the Punitive Damages Exclusion bars coverage under the Nautilus Policy for any punitive damages that may be awarded in the *Colvin* Lawsuit;
    c. Find and declare that Nautilus has and had no duty under the Nautilus Policy to indemnify any party or parties for any punitive damages awarded in the *Colvin* Lawsuit; and
    d. Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

DN 1, PageID# 13-14.

In lieu of answer, Outer Loop filed a motion to dismiss Nautilus' complaint on the grounds that this Court should decline to exercise jurisdiction and allow the coverage limits of the Nautilus Policy to be determined by a Kentucky court. DN 20; DN 20-1, PageID# 299. Outer Loop maintains that the AM Endorsement does not limit the Policy's coverage for damages arising from negligent training. DN 20-1, PageID# 301. Further, Outer Loop argues that the AM Endorsement only restricts the insurance coverage for damages resulting from physical bodily harm and does not limit the coverage for damages arising from psychological harm caused by abuse or molestation. *Id.* Outer Loop also urges that the PED Exclusion should be analyzed by the state court. *Id.*

### III.

A court of the United States may, pursuant to the Declaratory Judgment Act, render declaratory judgment in cases "of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). "Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." *Id.* Under the Act, courts have "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). The Sixth Circuit has instructed that courts should only render declaratory judgment "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Grand T. W. R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (citations omitted).

The Sixth Circuit has provided five factors (the "*Grand Trunk* factors") for courts to use as guidance when determining whether declaratory judgment is appropriate:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in

9

> clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Id.* at 326 (citations omitted).

At the outset, the Court will address Nautilus' assertion that its claims need not be evaluated under the *Grand Trunk* factors because "the *Colvin* Lawsuit involves different parties and different legal issues than this case" and, hence, there is not a "parallel" state action. DN 25, PageID# 325. Nautilus recently made the same argument in a case before the Eastern District of Kentucky. *See Nautilus Ins. Co. v. KC Diamond Sports Studio, LLC*, No. 21-63-DLB, 2022 U.S. Dist. LEXIS 130310, at *8-9 (E.D. Ky. July 22, 2022). As stated by the court in that case:

> Nautilus' assertion is incorrect and borders on disingenuous. This Court is unaware of any controlling case in which the *Grand Trunk* factors have not been applied due to an insurance company plaintiff not being a party to an underlying state court action. In fact, in the two cases Nautilus has cited to support its assertion, each court applied the *Grand Trunk* factors in making its decision, and to an insurance company that was not a party to the state court action. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 550, 554 (6th Cir. 2008) (noting that "Scottsdale was not joined as a defendant in the state court action," later listing the *Grand Trunk* factors and applying them to the case); *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 451, 454 (6th Cir. 2003) (noting that insurance company was not a party to the state court action, but that it filed the federal declaratory judgment action "seeking to determine its obligations under its policy" with a state court defendant, and later addressing the *Grand Trunk* factors).

> Furthermore, the excerpts quoted and cited by Nautilus, and held out to be dispositive in favor of its assertion that the *Grand Trunk* factors are inapplicable, were even pulled from sections of these cases where the Sixth Circuit was applying the *Grand Trunk* factors. (Doc. # 24 at 5-6) (quoting *Flowers*, 513 F.3d at 556, and bolding a sentence in which the Sixth Circuit was addressing the first factor);

10

> (*Id.* at 6) (quoting *Northland*, 327 F.3d at 454, in which the Sixth
> Circuit was only addressing the fourth factor). In short, the *Grand
> Trunk* factors are applicable and controlling on this case, and thus,
> having resolved the issue of applicable law . . . .

*Id.* at *9-10. The Eastern District's assessment applies equally to the instant case. Thus, the Court

will proceed to resolve the matter at bar under *Grand Trunk*.

### A. Factors One and Two: Settlement of the Controversy and Clarification of the Legal Relations at Issue

Regarding the first two *Grand Trunk* factors, "it is almost always the case that if a

declaratory judgment will settle the controversy, then it will clarify the legal relations in issue."

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 550, 557 (6th Cir. 2008) (citing *Bituminous*, 373

F.3d at 814; *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003)). For

this reason, "the inquiries required by these two factors often overlap substantially." *United

Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 397 (6th Cir. 2019).

The first *Grand Trunk* factor requires the Court to evaluate "whether the declaratory action

would settle the controversy." *Grand Trunk*, 746 F.2d at 326. The second *Grand Trunk* factor

considers "whether the declaratory action would serve a useful purpose in clarifying the legal

relations in issue." *Grand Trunk*, 746 F.2d at 326. In the Sixth Circuit, two lines of cases have

developed on what it means to "settle the controversy" and "clarify the legal relations" in the

context of an insurance company's suit to determine its policy liability. *Flowers*, 513 F.3d at 555-

57. At the center of the divide is whether declaratory judgment from the district court need only

reach the case presently in federal court or if it must also "settle the controversy" and "clarify the

legal relations" in the underlying state court action. *Id.* Here, this split is irrelevant, because, as

explained below, declaratory judgment from this Court would neither resolve the controversy nor

clarify the legal positions in the federal action or in the underlying state court case.

11

Nautilus has asked the Court to "[d]etermine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policy." DN 1, PageID# 13. According to Nautilus, the Court can make this determination as a matter of law, without reliance on any facts that need to be developed in state court. DN 25, PageID# 327. The language of the Policy, however, instructs otherwise.

As previously discussed in this opinion, the Nautilus Policy will cover a maximum of $1,000,000 for damages for "bodily injuries" that are "caused by an occurrence." DN 1-2, PageID# 39-40. And, as also explained previously, damages for bodily injuries "arising out of abuse or molestation" are not compensable under the Policy but the AM Endorsement provides up to $100,000 of coverage for such claims. *Id.*, PageID# 66. A declaration of the rights and liabilities of all parties under the Nautilus Policy would thus require the Court to determine the whether the claimed bodily injuries:

1.  "arose out of abuse or molestation," in which case the damages would be covered by the Policy but only up to the $100,000 limit allowed under the AM Endorsement;

2.  were "caused by an occurrence" (or "accident"), as defined by the Policy, in which case the damages would be covered by the Policy—but not subject to the AM Endorsement—and, thus, would be capped at $1,000,000; or

3.  arose neither from "abuse or molestation" nor an "occurrence" and, thus, would not be covered by the Policy or the AM Endorsement.

*See* DN 1-2, PageID# 40, 69. The Court would also have to determine if Outer Loop can separately be held liable for Douglas' conduct under a theory of *respondeat superior* or for its own separate negligence for its alleged failure to train or supervise. A review of the record before this Court, as

well as the state court record,[4] reveals that the parties have not provided the Court with an uncontested account of the facts needed to make these determinations.

In the underlying state court action, the parties dispute facts that would be relevant to declaratory judgment from this Court. For instance, the parties to do not agree on the account of the facts regarding the conduct that allegedly gave rise to the claimed injuries or on the nature of those injuries.[5] In addition, the parties to the *Colvin* Lawsuit are not in agreement as to whether Douglas was acting within the scope of her employment at all times relevant to the state court case.[6] The facts surrounding the claims for failure to train and supervise are also in dispute.[7] Because an uncontested record of facts has not been established, the Court cannot determine as a matter of law whether Douglas was an insured on the Nautilus Policy,[8] whether the claimed injuries arose from "abuse" or were the result of an "occurrence" within the meaning of the Nautilus Policy, whether the damages resulted from the type of injuries covered by the Policy or the AM Endorsement,[9] or the extent of Outer Loop's liability as an employer.

The bottom line is that, without an undisputed account of the facts, any declaratory judgment rendered by this Court would not "settle the controversy" or "clarify the legal relations in issue."  For example, the Court could prospectively declare that *if* Douglas' conduct constituted

---

[4] When faced with a motion to dismiss, the court may consider matters of public record in addition to the pleadings. *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997).

[5] *See* DN 1-1, PageID# 16; State Court Record, 21-CI-006638, Answer to Complaint on Behalf of Outer Loop Child Care, Inc., p. 2.; State Court Record, 21-CI-006638, Answer on Behalf of Defendant, Ramiah Berri Douglas, p. 2.

[6] *See* DN 1-1, PageID# 17-18; State Court Record, 21-CI-006638, Answer to Complaint on Behalf of Outer Loop Child Care, Inc., p. 3.; State Court Record, 21-CI-006638, Answer on Behalf of Defendant, Ramiah Berri Douglas, p. 2-3.

[7] *See* DN 1-1, PageID# 19-20; State Court Record, 21-CI-006638, Answer to Complaint on Behalf of Outer Loop Child Care, Inc., pp. 5-6.; State Court Record, 21-CI-006638, Answer on Behalf of Defendant, Ramiah Berri Douglas, p. 5.

[8] As an employee of Outer Loop, Douglas is only an "insured" on the Nautilus Policy and the AM Endorsement if she was acting "within the scope of [her] employment . . . or while performing duties related to the conduct of [Outer Loop's] business." DN 1-2, PageID# 49, 67.

[9] For example, whether the alleged damages resulted from psychological injury, bodily injury, or both could impact Nautilus' obligations under the Policy and AM Endorsement.

"abuse" as defined by the Nautilus Policy, *if* she was acting within the scope of her employment, *if* the alleged injuries arose out of Douglas' abusive conduct, and *if* the injuries were of the type covered by the AM Endorsement, *then* Nautilus would be required to indemnify up to $100,000 under the AM Endorsement. However, the facts necessary for such determinations are those that must be resolved by the state court in the underlying litigation. *See Nautilus Ins. Co. v. KC Diamond Sports Studio, LLC,* No. 21-63-DLB, 2022 U.S. Dist. LEXIS 130310, at *22 (E.D. Ky. July 22, 2022) (declining, under similar circumstances, to issue a prospective declaration of rights and liabilities). Accordingly, the first two *Grand Trunk* factors weigh against exercising jurisdiction.

### B. Factor Three: Evidence of Procedural Fencing

The parties agree that the third *Grand Trunk* factor is not at issue and, thus, this factor will not be addressed by the Court. *See* DN 20-1, PageID# 304; DN 25, PageID# 332.

### C. Factor Four: Friction Between State and Federal Court/Improper Encroachment on State Jurisdiction

The Sixth Circuit has stated that federal courts should evaluate whether the use of a declaratory action would increase friction between federal and state courts or improperly encroach upon state jurisdiction by assessing three subfactors:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
>
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
> (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

14

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 560 (6th Cir. 2008) (quoting *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 814-15 (6th Cir. 2004)).

According to the Sixth Circuit, "a declaratory judgment is proper if it will only have to decide purely legal questions or engage in fact-finding that does not affect the parties in the underlying action." *United Specialty Ins. Co. v. Cole's Place, Inc.*, 2018 U.S. Dist. LEXIS 67850, at \*10, 2018 WL 1914731 (W.D. Ky. Apr. 23, 2018), aff'd 936 F.3d 386 (6th Cir. 2019) (citation omitted). As previously discussed, a declaration of the liabilities and rights of the parties in the instant case would require the Court to delve into contested issues of fact necessarily and presently being litigated in the state court, including important factual questions regarding coverage under the Nautilus Policy. Thus, this subfactor weighs against exercising jurisdiction.

Turning to the second subfactor, the Sixth Circuit "generally consider[s] state courts to be in a better position to evaluate novel questions of state law." *Flowers*, 513 F.3d at 560 (citations omitted). But "[t]his consideration appears to have less force when the state law is clear and when the state court is not considering the issues." *Id.* Moreover, "when an insurance company '[is] not a party to the state court action, and neither the scope of insurance coverage nor the obligation to defend [is] before the state court . . . a decision by the district court on these issues would not offend principles of comity.'" *Id.* (quoting *Northland*, 327 F.3d at 454).

In this case, Nautilus is not a party to the *Colvin* Lawsuit, the insurance coverage questions are not before the state court, and the state law issues raised by the instant action are not novel. Nonetheless, the Sixth Circuit has declared, "the issue of . . . insurance contract interpretation [is a] question[] of state law with which the Kentucky state courts are more familiar and, therefore, better able to resolve." *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 815 (6th Cir. 2004). The court in *Bituminous* further stated:

> We have repeatedly held in insurance coverage diversity cases that declaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court. Further, such actions should normally be filed, if at all, in the court that has jurisdiction over the litigation which gives rise to the indemnity problem. Otherwise confusing problems of scheduling, orderly presentation of fact issues and res judicata are created.

*Id.* at 812-13 (internal citations and punctuation omitted). *But see Northland*, 327 F.3d at 454 (finding that the Court's exercise of jurisdiction would not create friction between the state and federal courts). In light of the above, and because this action raises no issues that are directly relevant or consequential to federal interests, the Court finds this subfactor to be best described as neutral, not weighing against or in favor of exercising jurisdiction.

The final subfactor "focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Flowers*, 513 F.3d at 561. The Sixth Circuit has found that "[t]he states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation." *Id.* (quoting *Bituminous*, 373 F.3d at 815) (internal quotation marks omitted). Accordingly, "even in cases where state law has not been difficult to apply, [the Sixth Circuit] has usually found that the interpretation of insurance contracts is closely entwined with state public policy." *Cole's Place,* 936 F.3d at 401. Because the instant case turns on Kentucky's interpretation of its insurance contracts, this subfactor weighs against exercising jurisdiction.

Overall, the first subfactor weighs against exercising jurisdiction; the second subfactor is neutral; and the third subfactor weighs against exercising jurisdiction. The fourth *Grand Trunk* factor, therefore, weighs against exercising jurisdiction.

**D. Factor Five: Existence of Better or More Effective Alternative Remedy**

The Sixth Circuit has, at times, found that "an alternative remedy is 'better' than federal declaratory relief if state law offers a declaratory remedy or if coverage issues can be litigated in state-court indemnity actions." *Cole's Place,* 936 F.3d at 401 (citing *Bituminous*, 373 F.3d at 816; *Travelers*, 495 F.3d at 273). Here, in addition to being able to file a state court declaratory judgment action under Ky. Rev. Stat. § 418.010, coverage issues can be litigated in state court at the conclusion of the state court action. *See Bituminous*, 373 F.3d at 816 (citing *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 462-63 (6th Cir. 1986)). Either of these remedies would have "the advantage of allowing the state court to apply its own law." *Id.* Thus, to the extent this factor is of any significance, it militates against exercising jurisdiction.

**E. Conclusion**

The Sixth Circuit has "never assigned weights to" the *Grand Trunk* factors and has, instead, stated that "[t]he relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on facts of the case." *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014). "The essential question is always whether a district court has taken a good look at the issue and engaged in a reasoned analysis of whether issuing a declaration would be useful and fair." *Id.* (citing *Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 390 (5th Cir. 2003)). Here, the first, second, fourth factors, and fifth *Grand Trunk* factors disfavor exercising jurisdiction, while the third factor is neutral. Taking into account all facts and circumstances of this case, and for the reasons otherwise stated herein, the best use of this Court's "broad discretion" is to dismiss Nautilus' declaratory judgment action as it relates to the rights and liabilities of the parties under the Nautilus Policy. *NGS Am., Inc. v. Jefferson*, 218 F.3d 519, 526 (6th Cir. 2000).

Regarding Nautilus' petition for declaratory judgment on its PED Exclusion, the Eastern District of Kentucky in *Nautilus Ins. Co. v. KC Diamond Sports Studio, LLC* noted that, though the exclusion "is less entangled with the facts of the state court suit, the Court notes that in exercising discretionary jurisdiction, it would not be interested in resolving some, but not all, of Nautilus' claims . . . because doing so would only create piecemeal litigation between this Court and the state court and would fall far short of 'settling the controversy.'" No. 21-63-DLB, 2022 U.S. Dist. LEXIS 130310, at *22 (E.D. Ky. July 22, 2022). This Court concurs and, accordingly, will decline to exercise jurisdiction over the declaratory judgment as it relates to the PED Exclusion.

For all the reasons stated above, the court declines to exercise jurisdiction over Nautilus' declaratory judgment action and the complaint will be dismissed in its entirety in a separate order.

**IV.**

On a final note, after Nautilus filed the present declaratory action, Colvin filed several counterclaims against Nautilus seeking declaratory judgment in her favor. DN 9. Colvin petitions the Court to declare that "Nautilus owes a duty of indemnification and coverage up to a policy limit of $1 million now and before trial for damages payable to Colvin as a result of allegations of Outer Loop Childcare, Inc[.]'s failure to properly train its employee Douglas" and that "Nautilus shall be liable for any punitive damages awarded against it because of the allegations of this Counterclaim against Nautilus itself even if in excess of the Outer Loop Nautilus Policy limit of $1 million. . . ." DN 9, PageID# 199, 207.

Colvin did not join Outer Loop's motion to dismiss and did not weigh in on Nautilus' arguments on the issue of jurisdiction. Colvin's petition for declaratory judgment relies on the same set of contested facts as Nautilus' declaratory judgment action. For all the same reasons that

18

the Court will decline to exercise jurisdiction over Nautilus' action, Colvin's counterclaims for declaratory judgment will be dismissed with the Nautilus complaint.

Colvin also asserted counterclaims under Kentucky's Unfair Claims Settlement Practices Act (Ky. Rev. Stat. §304.12-230, "KUCSPA"). It is true that the KUCSPA creates a private cause of action "for those who have claims against the named insured . . . ." *Pryor v. Colony Ins.*, 414 S.W.3d 424, *433 (Ky. App. 2013). However, to sue an insurance company under the KUCSPA, a first-party or third-party claimant must establish, *inter alia*, that the insurer was "'obligated to pay the claim under the terms of the policy.'" *Davidson v. Am. Freightways, Inc*., 25 S.W.3d 94, 100 (Ky. 2000) (quoting *Wittmer*, 864 S.W.2d at 890). "Absent a contractual obligation, there simply is no bad faith cause of action, either at common law or by statute." *Id.*; *see also Foremost Ins. Co. Grand Rapids v. Chang*, Civil Action No. 3:18-cv-718-CHB, 2021 U.S. Dist. LEXIS 52150, at *15 (W.D. Ky. Mar. 19, 2021) (citing *Wittmer*, 864 S.W.2d at 890) ("Under Kentucky law, there can be no claim of bad faith when the insurer has no obligation under the policy to pay the insured's claim.")

Here, as already discussed, the facts needed to establish Nautilus' obligation to pay under the terms of its Policy are still in dispute in state court. The KUCSPA action is thus premature. *See Heuser v. T.H.E. Ins. Grp.*, No. 3:18-CV-00776-RGJ, 2020 U.S. Dist. LEXIS 50808, at *5 (W.D. Ky. Mar. 24, 2020) (finding KUCSPA claims to be "premature" when liability was not yet established in state court); *Merrero v. SECURA Ins.*, No. 3:18-CV-613-CRS, 2019 U.S. Dist. LEXIS 11464, *2 (W.D. Ky. Jan. 24, 2019) (refusing to recognize a KUCSPA cause of action absent a determination of liability).

The Sixth Circuit has explained why dismissal is appropriate under these circumstances:

> "The jurisdiction of federal courts is limited by Article III of the
> United States Constitution to consideration of actual cases and

controversies, therefore federal courts are not permitted to render advisory opinions." *Adcock v. Firestone Tire and Rubber Co.*, 822 F.2d 623, 627 (6th Cir. 1987). "Ripeness is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed. This deficiency may be raised sua sponte if not raised by the parties." *Southern Pac. Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 502 (9th Cir. 1990), cert. denied, 116 L. Ed. 2d 333, 112 S. Ct. 382 (1991) (citation omitted).

Accordingly, Colvin's counterclaims pursuant to Ky. Rev. Stat. § 304.12-230 will be dismissed with the Nautilus complaint.[10]

August 19, 2022

Charles R. Simpson III, Senior Judge
United States District Court

---

[10] Colvin also asserted a counterclaim asking the Court to dismiss Nautilus' declaratory judgment action for alleged violations of Fed. R. Civ. P. 11. DN 9, PageID# 210-11. The parties have jointly filed a motion to dismiss this claim. DN 23.